ROBERT RAYBURN AND FRED W. RAYBURN v. ANDREW
W. COMSTOCK ET AL.

[Case No. 2.]

*Contract—Parties—Substitution—Consideration—Extension of time.*

A logging contractor having failed in the *full* performance of his
contract, by mutual agreement all claim for damages was
waived, and the time of performance extended into another
winter, the land-owners reserving the right to fix the time of
removal of the timber on *one* of the sections designated in the
contract. After this, and before the contractor had commenced
work under the new agreement, third persons were induced to
take it off his hands, and he was released upon their agree-
ment to perform his agreements, which action is held to amount
to a new contract with them, based upon the terms of the old
contracts, and for which there was a sufficient consideration.

Error to Alpena. (Simpson, J., presiding.) Argued
April 23, 1890. Decided May 2, 1890.

*Assumpsit.* Defendants bring error. Affirmed. The
facts are stated in the opinion.

*Turnbull & Dafoe,* for appellants.

*Depew & Rutherford* and *George H. Sleator,* for plaint-
iffs.

LONG, J. This is an action of *assumpsit,* brought in
the circuit court for Alpena county, to recover damages
which plaintiffs claim by reason of the defendants not
permitting them to perform a certain contract. On the
trial, plaintiffs had verdict and judgment. Defendants
bring error.

The contract under which plaintiffs claim grew out of
the following contract between the defendants and one
Thomas G. Spratt:

"It is agreed between Bewick, Comstock & Co. and Thomas G. Spratt, all of Alpena, M., this thirteenth day of September as follows:

"The said Spratt shall go on the lands of Bewick, Comstock & Co., on the east side of what is known as the 'Sheridan Road,' on sections 17 and 20, and on the S. $\frac{1}{2}$ of N. W. $\frac{1}{4}$, and N. E. $\frac{1}{4}$ of S. W. $\frac{1}{4}$, of 16, and cut, haul, and deliver all of said timber into the limits of the T. B. R. Boom Co., for the sum of $2.75 per M. feet; and also on section 21, and deliver as above all the timber owned by said company, for the sum of $4.00 per M. feet. From two to three million feet of said timber to be delivered in the spring of 1883, as early as the water will permit, and the balance the following year, as early as possible, the timber to be put in the first year under this contract is that on sections 17 and 20, estimated at 1,500 M. feet, and the balance from section 21, to make up the amount to be delivered the first year, cutting first that which has been killed by fire

"The payments for putting in said timber the first year to be made as follows: A cash advance of $800.00 to be made on Oct. 15; supplies to the amount of $1,-000.00 during the winter; money in the spring, April 1, to pay the men employed in putting in said logs, not, however, to exceed the amount due under the contract; 25 cents per M. when said logs are all out of what is known as the 'Buff Creek,' and 25 cents per M. when said logs are all delivered into the south branch of Thunder Bay river, if said amount is due under the contract. Any balance that may be due to be paid when said logs, or the main body of them, are delivered in the T. B. R. Boom Co.'s limits as they now exist. Reserving enough money in the hands of Bewick, Comstock & Co. to pay the value of any scattering logs, if the drive is not brought down clean. Said logs to be scaled by a party to be mutually agreed upon. Each party to pay one-half of said scaler's wages, and the second party to board the scaler. The terms of payment for the two years' operating shall be the same relative time as the first year, unless varied by written consent. Interest at the rate of 7 per cent. shall be charged and received on the cash advances until April 1 of the following year.

"All of the above is agreed to by the said Bewick, Comstock & Co., who agree to fulfill their part of this contract as is specified by them as written above. Boom

sticks to be furnished by the first party, free of cost, to raft the logs over Hubbard lake. The second party at the expense of getting them from where they may be in the lake. BEWICK, COMSTOCK & Co.
"THOMAS G. SPRATT.
"*Alpena, Sept.* 13, 1882."

It seems that Mr. Spratt was unable to fulfill the above contract within the time limited therein, and the same was extended by the following writing indorsed thereon:

"Whereas, it is now estimated by Thos. G. Spratt that there is at this time about four million feet of timber left on the land described under this contract, and it being rather more than said Spratt wants to put in the present winter, it is therefore mutually agreed that said Spratt may leave all the Norway timber on section 21 that he does not wish to put in, using caution to leave it in such shape as it will be in the least danger from fire, also to be left in a compact body. All timber that is left to be put in in the winter of 1884–85.
"BEWICK, COMSTOCK & Co.
. "*December* 1, 1883."

Subsequently the following indorsement was also made on this contract:

"ALPENA, Oct. 8, 1884.
"Whereas, the conditions of this contract have been broken by said Spratt, party to said contract, and, for the purpose of a settlement of all broken and disputed matters, the said Spratt agrees that he will, or cause to be, put in the present winter of 1884 and 1885, all the pine timber on section 16 described in the within contract, and that he shall have the privilege of putting in the timber on section 21, mentioned within, when Bewick, Comstock & Co. decide to have it put in, at the price mentioned in the within contract.
"BEWICK, COMSTOCK & Co.
. "THOMAS G. SPRATT."

The foregoing contract was assigned to the plaintiffs in this suit by the following writing:

"For a valuable consideration, we hereby agree to per-

form and complete all of the within contract as, by the terms thereof, said Thos. G. Spratt was required to do by Bewick, Comstock & Co.

"ROBERT RAYBURN & SON.

"*Alpena, Nov.* 6, 1884."

The plaintiffs claim that the defendants agreed to this substitution, and they consented to take Mr. Spratt's place in performing the Spratt contract, and that Spratt was released from any further obligations thereunder by the defendants; that is, that the defendants, Spratt, and plaintiffs mutually agreed with each other that plaintiffs should perform all that Spratt was to perform under the indorsement of October 8, 1884, above set forth, and to have and receive whatever Spratt would have received if the work had been performed by him, and Spratt to be released; that they were then advised by the defendants that they wanted all the timber on section 16 put in that winter, and that, in the winter following the making of the contract, they did put in all the timber on 16, for which defendants paid them in full; that in March, 1885, and after the timber on 16 had all been put in, and defendants had paid for that, they had a talk with defendants about putting in that on 21 during that spring, and were told that they could not put it in that spring, but in another year they might do so. The reason given by the defendants at this time for not having it put in that spring was that it would run largely to Norway, and that Norway was not worth enough to make it pay.

Plaintiffs further claim that, in the spring of 1885, after getting through cutting and hauling from section 16, they left all their rigging and sleighs there in the camp, preparatory to the work on section 21 the following year; that, in September following, they again talked with defendants, and were told that the defendant William Comstock was going up there, to the land, in a little

while, and on his return they would let them know whether they would have the timber put in or not. It appears that shortly after this the defendants let the contract for cutting and putting in this timber on 21 to Oliver Fitzpatrick, without any further consultation with plaintiffs, and without their consent. Plaintiffs also gave testimony tending to show the cost of putting this timber in, and the profits which would have accrued to them if they had been permitted to fulfill the contract.

The defendants claimed that the plaintiffs did not fully remove the timber from 16.

The trial court submitted the questions in issue between the parties as follows:

" Now, the defendants in this case claim that, even if you should find that the Rayburns were substituted in the place of Spratt, and that the defendants were bound to them upon this agreement, the defendants claim here that the Rayburns did not take the timber all off from section 16. Now, gentlemen of the jury, these contracts bound Spratt to take the timber off from section 16, and bound him to take the timber off from section 21; and, if the Rayburns were substituted in his place, it bound the Rayburns to take off that timber clean from section 16, and also off from 21; and there is nothing in this case that shows that they were prevented from taking the timber off from section 16, and if they did not do that they violated the contract, and in that case they could not recover in this action, if they did neglect to take the timber off. But, whether they did, or whether they fulfilled as to section 16, it is a question for you to find from the evidence. You have heard the evidence in this case as to that part, and, if they failed to take the timber off from section 16 as the contract required, —there is nothing in this case that prevented them from doing it,—then they violated their contract; and, if they violated this contract in the least, where they have had an opportunity, they cannot hold the Comstocks to fulfill any part of it, because, as I have stated before, in order to recover, they must show that they have fulfilled everything, or were prevented by the Comstocks' refusing to let them do it.

"The plaintiffs claim that they have fulfilled the contract as far as they were permitted to do it, and, whether they have done that or not, that you will have to find. If you find that they have, then they claim that, when they went to take the timber off from 21, the Comstocks refused to let them do it. That is, they claim this: The Comstocks were not obliged to let them take the timber off from section 21 until they deemed it necessary. That contract leaves it optional with the Comstocks. It simply gives Spratt the privilege to take it off when the Comstocks want it taken off. And, if the Rayburns were placed in Spratt's place, then the Comstocks were only bound to let the Rayburns take it off when they considered it necessary to take it off, or whenever, as the contract says, they decide to have it taken off.

"Now, if Rayburn & Son were in Spratt's place, and had fulfilled everything up to that time on their part, it was a privilege that they had a right to assert, that, when the Comstocks reached the conclusion, and decided to have that timber taken off, it was their privilege and right to take it off, under this contract, if they were in the place of Spratt. It was Spratt's right, if he had stayed in; and, if he had passed it over to the Rayburns, and the Comstocks consented to it, then it was their right. And when the Comstocks decided to take it off, as it seems from the evidence that they did, because they let the contract to somebody else, then I say it was their duty to have let the Rayburns do it, if they desired to; and, if they refused to let them do it, in that case the defendants broke their contract with the Rayburns; and, when a man breaks his contract, he must pay whatever damage the other party receives by virtue of the breach."

On the question of damages the court instructed the jury that plaintiffs, if they were entitled to recover at all, would be entitled to the difference between the cost of taking the timber off and the contract price.

At the request of counsel for the defendants, the court submitted three special questions to the jury as follows:

"Q. Did the plaintiffs and defendants and Spratt ever get together, and agree that the plaintiffs should be substituted in this contract in place of Spratt, each one of these parties understanding it in this way?

"*A.* Yes.

"*Q.* Did the defendants refuse to release Spratt from this contract?

"*A.* No.

"*Q.* Did the defendants ever agree to release Spratt from this contract?

"*A.* Yes."

The contention in this Court by counsel for defendants is—

1. That the indorsement on the contract dated October 8, 1884, is void for want of consideration.

2. That, by the indorsement in reference to section 21, Spratt did not agree to put the timber in, so that is void for want of mutuality.[1]

3. That, by this indorsement in reference to section 21, Spratt only had the privilege of putting this timber in when defendants decided to have it put in, at the price mentioned in the original contract.

4. That this contract of indorsement only had this legal effect: That, if Spratt put this timber in, he should be paid the price mentioned in the original contract.

Under the first point, defendants' counsel claim that, at the time of making this indorsement, Spratt was liable to the defendants for non-performance of this contract, and that all his rights thereunder were at an end; that defendants could have put the timber in, and compelled him to pay all damages; that Spratt, by this new arrangement of that date, merely agreed to do what he ought to have done before, and what he was bound to do; and that, if it be conceded that Spratt, by this indorsement, bound himself to put the timber in on 21 when defendants desired it, the same was not binding on defendants, as there was no consideration for the waiver or extension of time.[2] There would be much force in this claim if the new arrangement made between defendants and Spratt on

---

[1] Citing *McDonald v. Bewick*, 51 Mich. 79, 80; *Wilkinson v. Heavenrich*, 58 Id. 574.

[2] Counsel cited Add. Cont. § 85.

October 8, 1884, was simply to carry out the terms of the old contract, and to perform thereunder within the time limited therein. But by the new agreement of that date the time was extended into the winter of 1884 and 1885; the defendants reserving to themselves the right to fix the time of removal of that on 21. The defendants by this new arrangement also settled with Spratt for all damages which might have accrued to them by Spratt's failure to perform his first contract.

This was the situation of affairs when the plaintiffs were called upon by the defendants to take the Spratt contract off his hands. Plaintiffs at that time were under no obligation to the defendants, and were in no way interested in the performance of this contract. They found defendants and Spratt with this contract between them, and which it was conceded, by the writing indorsed, Spratt had failed to perform. They also learned from the writing that the defendants had absolved Spratt from all damages for its breach, and that defendants were willing that Spratt should go on and put in the timber from 16, which he had failed to do under the original contract, but that it was conditioned under that new agreement that, if he would do so, he had the right to put in that on 21 whenever the defendants should determine to have it lumbered. With this understanding, the plaintiffs were induced to take the contract off Spratt's hands. The jury have found that Spratt was released by this arrangement.

It is true that if one promises to perform a certain undertaking at a specified price, and while this contract is still in force a subsequent promise is made to pay him a larger price for the performance of the same thing, it would be a mere gratuitous undertaking or a promise to pay for doing that which he is already bound to do. But where the old contract is rescinded, and the parties

are discharged from their obligations under it, or all damages released by reason of its non-performance, the parties may make a new and valid agreement, though such agreement may relate to the subject-matter of the old contract, which has been set aside and discarded. Be this as it may, the circumstances of this case take it without the rule claimed by defendants' counsel. It does not rest entirely upon the rights of Mr. Spratt, under these contracts. The parties agreed to the release of Spratt, and a new contract was entered into between defendants and the plaintiffs. The basis of this contract was fixed by the terms of the old contracts; that is, that plaintiffs should go on and put in the lumber on 16, and, whenever the defendants were ready to lumber on 21, they might have the privilege of putting this in at $4 per 1,000. This was a sufficient consideration.

The other questions raised have as little force. By agreement of all the parties, the plaintiffs were made parties to the contract. At this time the timber was standing on 16 and 21, that on 16 to be cut the coming winter. Plaintiffs cut and put in all on section 16, according to the terms of the contract. The defendants settled up and paid for this part as agreed, and then promised the plaintiffs that they might put that in on 21 during the next year. Acting upon this understanding, the plaintiffs left their sleighs and camp equipage on 16, ready for use the following season, as section 21 was immediately · adjoining this section. In the face of this agreement, the defendants, without further notice to the plaintiffs, let the contract on 21 to other parties.

The contract was not void for want of mutuality. The disputed facts in the case were fairly submitted to the jury, and they found the facts as claimed by plaintiffs.

80 Mich.—30.

The rule of damages laid down by the court was the proper one.

The judgment must be affirmed, with costs.

The other Justices concurred.